```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------------x
                                                       :
Sylvester Dziennik, Mieczyslaw Kiersztyn,              :
Ferdynand Kobierowski, individually and on behalf of   :
all persons similarly situated,                        :
                                                       :
                             Plaintiffs,               :      **MEMORANDUM**
                                                       :      **AND ORDER**
                    -against-                          :
                                                       :      05-CV-4659 (DLI)(MDG)
                                                       :
Sealift, Inc., Fortune Maritime, Inc.,                 :
Sagamore Shipping, Inc., Sealift Chemicals, Inc., Victory :
Maritime, Inc., Sealift Tankships, Inc., Remington     :
Shipping, Inc., Wilson Shipping, Inc.,                 :
                                                       :
                             Defendants.               :
----------------------------------------------------------------------x
```

**DORA L. IRIZARRY, U.S. District Judge:**

The named plaintiffs in this class action, each a citizen of Poland, worked as seafarers aboard U.S. flag vessels under the control of one or more of the defendants. Plaintiffs filed the instant class action on October 3, 2005, alleging breach of employment contract and the applicable collective bargaining agreement and violation of federal maritime law, specifically 46 U.S.C. §§ 10313 and 11107. Plaintiffs seek recovery of unpaid wages, overtime wages, and statutory penalties. Defendants have moved to dismiss plaintiffs' complaint under Fed. R. Civ. P. 12(b)(6). For the reasons set forth below, defendants' motion to dismiss is granted as to the breach of the collective bargaining agreement claim but denied as to claims of breach of employment contract and violation of 46 U.S.C. §§ 10313 and 11107.

1

**I.  Facts**

Plaintiffs Sylvester Dziennik, Mieczyslaw Kiersztyn, and Ferdinand Kobierowski (collectively, "plaintiffs" or "named plaintiffs") are Polish citizens who worked at various times aboard one or more seagoing vessels owned by one or more of the defendants.  Plaintiffs' class action complaint purports to represent similarly situated foreign nationals employed, at any time since January 1, 1999, aboard vessels owned by the defendants.[1]  Plaintiff Dziennik worked aboard the M/V ASCENSION (owned by Sagamore Shipping, Inc.) during 2000 and 2001 and aboard the S/S CLEVELAND (owned by Victory Maritime, Inc.) during 2000.  Plaintiff Kiersztyn worked aboard the M/V ADVANTAGE (owned by Fortune Maritime, Inc.) during 2003.  Plaintiff Kobierowski worked aboard the M/V ADVANTAGE during 2001 to 2004.  Plaintiffs allege that defendant Sealift, Inc. is also the owner, manager, and operator of the M/V ASCENSION, S/S CLEVELAND, and M/V ADVANTAGE, as well as of other vessels named in the complaint that are owned by the other defendants in this action.[2]

Plaintiffs assert three causes of action:  (1) breach of "contracts of employment, including but not limited to Collective Bargaining Agreements between Defendants and/or its [sic] agents and the Seafarers International Union and the American Maritime Officers Union" for failure to pay "full wages due or otherwise owed"; (2) violation of 46 U.S.C. § 11107, through the engagement of

---

[1] Plaintiffs' pending motion for class certification is not addressed at this time.

[2] According to the complaint, Sealift, Inc. also owns the TSGT John A. Champan (formerly the M/V MERLIN), the Captain Steven L. Bennett (formerly the M/V MONTAUK; also allegedly owned by Sealift Chemicals, Inc.), and the M/V VIRGINIAN (formerly the M/V SAGAMORE; also allegedly owned by Sagamore Shipping, Inc.).
The rest of the fleet includes the M/V NOBLE STAR (owned by Sealift Tankships, Inc.), the M/V MAJOR BERNARD FISHER (owned by Remington Shipping, Inc.), and the S/S WILSON (owned by Wilson Shipping, Inc.).

seamen "contrary to a law of the United States"; and (3) violation of 46 U.S.C. § 10313(f) and (g) for "refusal and neglect to pay the seafarers their full balance of wages due [including overtime wages] without sufficient cause."[3] (Compl. ¶¶ 19–22.)

Though the complaint does not specify or describe the "contracts of employment" referred to therein, defendants have provided as exhibits various employment contracts, governed by Polish law, between the named plaintiffs and Sealift, Inc.

Also provided as an exhibit by defendants is a collective bargaining agreement, dated June 16, 1990 to June 15, 1993, between the American Maritime Association on behalf of itself and member companies (Sealift Bulkers, Inc. and Victory Maritime, Inc.) and the Seafarers International Union of North America, Atlantic, Gulf, Lakes and Inland Waters District, AFL-CIO (hereinafter the "CBA"). Defendants admit that the CBA currently covers Sealift, Inc. "and the related defendants," as the CBA has been extended through numerous memoranda of understanding. (Defs.' Mem. at 3.) Article II, Section 3 of the CBA provides that, "[f]or the adjustment of any grievance arising in connection with performance of this Agreement which cannot be satisfactorily adjusted on board the vessel[,] there shall be established a Port Committee at the port where Articles are terminated." (Defs.' Ex. 3 at 7.) Grievances are handled by the "Port Committee," or, if an agreement is not possible among Committee members, by an impartial arbitrator. The CBA states that:

---

[3] Plaintiffs alleged one additional claim: violation of 46 U.S.C. § 10101 et seq. for failure "to pay full overtime wages pursuant to contracts and the [collective bargaining agreement], and the common law, United States statutory law, and the General Maritime Law." (Compl. ¶ 20.) To the extent that "United States statutory law" referred to a claim for overtime wages under the Fair Labor Standards Act, plaintiffs have voluntarily withdrawn such a claim. (Pls.' Mem. at 10.) This claim for overtime wages under federal maritime law is thus essentially the same as the claim for wages due under 46 U.S.C. § 10313.

3

> [a]ll grievances must be submitted to the Union by the affected seaman within ninety (90) days from the earlier of the date the seaman leaves the vessel or the Ship's Articles are terminated. A failure to file a grievance within this time period shall preclude an assertion of this grievance or its subject matter at any later date in any forum.

(*Id*.) Plaintiffs do not allege membership in the Seafarers International Union but rather allege that they are covered under the CBA as third-party beneficiaries.

## II. Standard of Review

The court's role in deciding a motion to dismiss filed under Fed. R. Civ. P. 12(b)(6) is simply to assess the legal feasibility of the plaintiff's claims rather than to weigh evidence that might eventually be offered at trial. *E.g.*, *AmBase Corp. v. City Investing Co. Liquidating Trust*, 326 F.3d 63, 72 (2d Cir. 2003); *Cooper v. Parsky*, 140 F.3d 433, 440 (2d Cir. 1998). The court must accept as true all well-pleaded factual allegations and draw all reasonable inferences in the plaintiff's favor. *Dangler v. New York City Off Track Betting Corp.*, 193 F.3d 130, 138 (2d Cir. 1999). In deciding the motion, the court may consider documents upon which the plaintiff relied when drafting the complaint, such as "documents attached to the complaint as an exhibit or incorporated in it by reference, . . . matters of which judicial notice may be taken, or . . . documents either in plaintiff['s] possession or of which plaintiff[] had knowledge and relied on in bringing suit." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (quoting *Brass v. Am. Film Techs. Inc.*, 987 F.2d 142, 150 (2d Cir. 1993)). A motion to dismiss under 12(b)(6) must be denied "unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957).

### III. Standing

Defendants argue that the named plaintiffs lack standing to assert claims against some of the defendants. As a threshold matter, "standing imports justiciability: whether the plaintiff has made out a 'case or controversy' between himself and the defendant within the meaning of Art. III." *Denney v. Deutsche Bank AG*, 443 F.3d 253, 263 (2d Cir. 2006) (quoting *Warth v. Seldin*, 422 U.S. 490, 498, 95 S. Ct. 2197, 45 L. Ed. 2d 343 (1975)). That the present case is a proposed class action "does not relax this jurisdictional requirement." *Id.* "To meet the Article III standing requirement, a plaintiff must have suffered an 'injury in fact' that is 'distinct and palpable'; the injury must be fairly traceable to the challenged action; and the injury must be likely redressable by a favorable decision." *Denney*, 443 F.3d at 263 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992); *Whitmore v. Arkansas*, 495 U.S. 149, 155, 110 S. Ct. 1717, 109 L. Ed. 2d 135 (1990)). "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice . . . ." *Lujan*, 504 U.S. at 561. However, "[a] plaintiff, including one who is seeking to act as class representative, must have individual standing to assert the claims in the complaint against each defendant being sued by him." *Ramos v. Patrician Equities Corp.*, 765 F. Supp. 1196, 1199 (S.D.N.Y. 1991) (collecting cases holding the same). "A plaintiff may not use the procedural device of a class action to bootstrap himself into standing he lacks under the express terms of the substantive law." *Angel Music, Inc. v. ABC Sports, Inc.*, 112 F.R.D. 70, 74 (quoting *Weiner v. Bank of King of Prussia*, 358 F. Supp. 684, 705 (E.D. Pa. 1973)).

Named plaintiffs only allege having worked aboard vessels owned or operated in some capacity by four of the defendants: (1) Sealift, Inc., (2) Sagamore Shipping, Inc., (3) Victory Maritime, Inc., and (4) Fortune Maritime, Inc. As to the remaining four defendants—(1) Sealift Chemicals, Inc.,

(2) Sealift Tankships, Inc., (3) Remington Shipping, Inc., and (4) Wilson Shipping, Inc.—plaintiffs only allege that members of the putative class worked aboard vessels owned by these defendants. Thus, as there is no causal link between the named plaintiffs and any injury that might have been caused to others by these last four defendants, defendants Sealift Chemicals, Inc., Sealift Tankships, Inc., Remington Shipping, Inc., and Wilson Shipping, Inc. are dismissed because the named plaintiffs lack standing against them.

IV.     **Breach of Employment Contract and the CBA**

Named plaintiffs allege breach of their employment contracts and the CBA as "direct beneficiaries or third party beneficiaries," stemming from the defendants' failure "to make payments of the full wages due or otherwise owed to said Plaintiffs and the class they seek to represent." (Compl. ¶ 18.) Regarding plaintiffs' claim for breach of employment contract, neither party addresses this claim in the memoranda of law submitted. At this time, as plaintiffs have satisfied the requirement in Fed. R. Civ. P. 8(a) to provide a "short and plain statement of the claim," defendants' motion to dismiss the breach of employment contract claim is denied.

Plaintiffs' claim for breach of the CBA, on the other hand, does not survive defendants' motion to dismiss. Defendants argue that plaintiffs are neither parties nor third-party beneficiaries to the CBA. However, on the present motion, the court accepts the allegations in the plaintiffs' complaint as true. Nevertheless, plaintiffs' claim for breach of the CBA fails for another reason.

Generally, before an employee files suit against an employer for breach of a collective bargaining agreement, an employee must "attempt to exhaust any grievance or arbitration remedies provided in the collective bargaining agreement." *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S.

6

151, 163, 103 S. Ct. 2281, 76 L. Ed. 2d 476 (1983) (citing *Republic Steel Corp. v. Maddox*, 379 U.S. 650, 652–53, 85 S. Ct. 614, 13 L. Ed. 2d 580 (1965)); *see also Korinis v. Sealand Servs., Inc.*, 490 F. Supp. 418, 420 (S.D.N.Y. 1980) (citing *Vaca v. Sipes*, 386 U.S. 171, 184, 87 S. Ct. 903, 17 L. Ed. 2d 842 (1967)). With respect to a seaman's suit for wages derived solely from the terms of a collective bargaining agreement, the Second Circuit has stated that "[t]here would appear to be no just reason why plaintiff should obtain such wage benefits as the Agreement may provide but simultaneously repudiate the means specified in the Agreement for the determination thereof." *Kowalik v. Gen. Marine Transp. Corp.*, 550 F.2d 770, 772 (2d Cir. 1977).

Plaintiffs have alleged breach of the CBA as a cause of action independent from the alleged maritime law violations. Plaintiffs have not alleged any attempt to pursue their CBA-based wage claim through the arbitration and grievance procedures outlined by the CBA. Plaintiffs rely on *U.S. Bulk Carriers, Inc. v. Arguelles*, 400 U.S. 351, 91 S. Ct. 409, 27 L. Ed. 2d 456 (1971) to argue that "[s]eafarers have never been required to follow mandatory grievance and arbitration procedures." (Pls.' Mem. at 6.) However, *Arguelles* did not announce an unqualified opening of the federal courts for a seaman to pursue a breach of a collective bargaining agreement claim where the agreement stipulates grievance and arbitration procedures. Rather, *Arguelles* outlined more specifically that, where a seaman sues for wages under 46 U.S.C. § 10313, there is a choice between pursuing grievance and arbitration provisions of a collective bargaining agreement or bringing the suit directly in federal court. As plaintiffs allege breach of the CBA apart from 46 U.S.C. § 10313 and have not alleged invoking the grievance provisions available under the CBA, this claim is dismissed.

7

## V. Alleged Violation of 46 U.S.C. § 10313

Though an exhaustion requirement is applicable to claims under a collective bargaining agreement, "seamen may sue for wages . . . [under 46 U.S.C. § 10313] . . . without first exhausting any contractual dispute resolution procedures." *Korinis*, 490 F. Supp. at 420 (citing *Arguelles*, 400 U.S. at 357). *Cf. Kowalik*, 550 F.2d at 772 (dismissing a seaman's claim for wages derived from a collective bargaining agreement where seaman did not assert rights pursuant to § 596, predecessor to § 10313). The complaint states that each named plaintiff "was employed as a seaman" by defendants and that defendants' withholding of the "full balance of wages due [including overtime wages] without sufficient cause" violates § 10313(f) and (g) and entitles plaintiffs to "two days' pay for every day of delay." (Compl. ¶¶ 9–11; 20, 22.) Section 10313 states in relevant part as follows:

> (a) A seaman's entitlement to wages and provisions begins when the seaman begins work or when specified in the agreement required by section 10302 of this title for the seaman to begin work or be present on board, whichever is earlier.
> . . . .
> (f) At the end of a voyage, the master shall pay each seaman the balance of wages due the seaman within 24 hours after the cargo has been discharged or within 4 days after the seaman is discharged, whichever is earlier. When a seaman is discharged and final payment of wages is delayed for the period permitted by this subsection, the seaman is entitled at the time of discharge to one-third of the wages due the seaman.
> (g) When payment is not made as provided under subsection (f) of this section without sufficient cause, the master or owner shall pay to the seaman 2 days' wages for each day payment is delayed.

46 U.S.C. § 10313. "Seaman" in the statute is broadly defined as "an individual (except scientific personnel, a sailing school instructor, or a sailing school student) engaged or employed in any capacity on board a vessel." 46 U.S.C. § 10101. Given the definition in § 10101 and the guidelines of § 10313, the complaint sufficiently states a claim under which relief may be granted for violation of § 10313, and defendants' motion to dismiss this claim is denied. Any arguments concerning whether the named plaintiffs qualify as "seamen" do not raise questions for the instant motion, as

8

plaintiffs have satisfied the pleading requirements of Fed. R. Civ. P. 8(a).

**VI.     Alleged Violation of 46 U.S.C. § 11107**

Section 11107 provides:

> An engagement of a seaman contrary to a law of the United States is void. A seaman so engaged may leave the service of the vessel at any time and is entitled to recover the highest rate of wages at the port from which the seaman was engaged or the amount agreed to be given the seaman at the time of engagement, whichever is higher.

46 U.S.C. § 11107. Thus, liability under § 11107 requires, by its terms, a violation of some other "law of the United States." The complaint alleges that defendants employed each plaintiff seaman without shipping articles as required by 46 U.S.C. § 10302[4] and without merchant mariner's

---

[4] This provision provides:

(a) The owner, charterer, managing operator, master, or individual in charge shall make a shipping agreement in writing with each seaman before the seaman commences employment.

(b) The agreement shall contain the following:
(1) the nature, and, as far as practicable, the duration of the intended voyage, and the port or country in which the voyage is to end.
(2) the number and description of the crew and the capacity in which each seaman is to be engaged.
(3) the time at which each seaman is to be on board to begin work.
(4) the amount of wages each seaman is to receive.
(5) regulations about conduct on board, and information on fines, short allowance of provisions, and other punishment for misconduct provided by law.
(6) a scale of the provisions that are to be provided each seaman.
(7) any stipulation in reference to advances and allotments of wages.
(8) other matters not contrary to law.

(c) Each shipping agreement must be signed by the master or individual in charge or a representative of the owner, charterer, or managing operator, and by each seaman employed.

documents as required by 46 U.S.C. § 8701.[56]

Defendants contend that since plaintiffs worked as "riding crew" or "riding gang" members, and as such were not part of the ships' licensed crews, these provisions do not apply to plaintiffs.[7]

---

> (d) The owner, charterer, managing operator, master, or individual in charge shall maintain the shipping agreement and make the shipping agreement available to the seaman.

[5] For certain vessels meeting the requirements listed in § 8701, this section provides:

> A person may not engage or employ an individual, and an individual may not serve, on board a vessel to which this section applies if the individual does not have a merchant mariner's document issued to the individual under section 7302 of this title. Except for an individual required to be licensed or registered under this part, the document must authorize service in the capacity for which the holder of the document is engaged or employed.

[6] Though plaintiffs' memorandum of law cites several other laws that defendants have allegedly violated in addition to §§ 8701 and 10302, which are specified in the complaint, plaintiffs admit that they are not asserting independent claims under these provisions. Thus, the court disregards defendants' argument that plaintiffs do not have a private right of action under 46 U.S.C. §§ 8103 and 8701.

[7] Subsequent to the filing of the present action, Congress amended 46 U.S.C. § 2101 on July 11, 2006 to add a definition of a "riding gang member" as

> an individual who
> (A) has not been issued a merchant mariner document under chapter 73;
> (B) does not perform--
> (i) watchstanding, automated engine room duty watch, or personnel safety functions; or
> (ii) cargo handling functions, including any activity relating to the loading or unloading of cargo, the operation of cargo-related equipment (whether or not integral to the vessel), and the handling of mooring lines on the dock when the vessel is made fast or let go;
> (C) does not serve as part of the crew complement required under section 8101;
> (D) is not a member of the steward's department; and
> (E) is not a citizen or temporary permanent resident of a country designated by the United States as a sponsor of terrorism or any other country that the Secretary, in consultation with the Secretary of State and the heads of other appropriate United

With respect to § 10302, defendants argue, in the alternative, that the employment contracts executed with each named plaintiff qualify as shipping agreements for statutory purposes. However, a motion to dismiss is not the appropriate forum for a thorough parsing of the relevant Title 46 provisions, whether each plaintiff meets the statutory definition of a "seaman" or a "riding gang member," or whether the employment contracts qualify as shipping articles. Plaintiffs' complaint sufficiently states a claim under § 11107 upon which relief may be granted, and defendants' motion to dismiss this claim is denied.[8]

**VII.     Statute of Limitations, Laches, and *In Pari Delicto***

Defendants argue that plaintiffs' claims under the CBA and the FLSA are barred by the statute of limitations. However, as discussed *supra*, these claims have been dismissed. The court thus need not address defendants' argument.

Defendants' next contention is that the doctrine of laches should bar plaintiffs' suit. Claims

---

States agencies, determines to be a security threat to the United States.

46 U.S.C. § 2101(26a). Also effective July 11, 2006, § 8106 states that "[t]he owner or managing operator of a freight vessel of the United States on voyages covered by the International Convention for Safety of Life at Sea" must ensure, *inter alia*, that "each riding gang member is identified on the vessel's crew list."

[8] Defendants argue that plaintiffs may not recover under both § 10313 and § 11107. Defendants argue that recovery under § 11107 is a penalty and that, hence, allowing recovery under § 10313 for delay and penalty wages would constitute an "unfair 'penalty upon a penalty.'" (Defs.' Mem. at 18.) There is some authority indicating that recovery is possible under both provisions. *See Kossick v. United Fruit Co.*, 365 U.S. 731, 735 n.4, 81 S. Ct. 886, 6 L. Ed. 2d 56 (1961) ("In our law the seaman who ships without articles can recover the highest wages paid at the port of embarkation, as well as subjecting the master who took him on board to penalties.) Nevertheless, at this stage in the litigation, where plaintiffs have properly pled claims under both § 10313 and § 11107, the court shall not dismiss either claim prematurely.

brought under the Merchant Seamen Protection and Relief Act are not subject to any statute of limitations but rather are governed by the equitable doctrine of laches. *See, e.g., DeSilvio v. Prudential Lines, Inc.*, 701 F.2d 13, 15 (2d Cir. 1983) ("The equitable doctrine of laches has immemorially been applied to admiralty claims to determine whether they have been timely filed."); *Bolanos v. Norwegian Cruise Lines Ltd.*, No. 01 Civ. 4182, 2002 WL 1465907, at *7 (S.D.N.Y. July 9, 2002). In asserting laches, a party must show "(1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting the defense." *Bolanos*, 2002 WL 1465907, at *7 (quoting *Costello v. United States*, 365 U.S. 265, 282, 81 S. Ct. 534, 5 L. Ed. 2d 551 (1961)). However, "[a]lthough a court may consider the defense of laches on a motion to dismiss, courts generally are not inclined to do so because application of the laches defense involves consideration of fact issues outside the pleadings." *Id*. (citations omitted). Both sides raise issues outside the pleadings regarding the defense of laches, and the court declines to consider the issue at this time.

Defendants' last remaining contention is that, because plaintiffs "willingly engaged in employment on defendants' vessels, two of the named plaintiffs for periods exceeding three years," they should have known of defendants' alleged failure to comply with certain requirements (e.g., as to the merchant mariner's documents or citizenship requirements). (Defs.' Mem. at 23.) Defendants argue that "[i]f any law was violated, it was with plaintiffs' full cooperation, and plaintiffs are barred by the doctrine of *in pari delicto* from recovery." (*Id*.) The doctrine of *in pari delicto* is "[t]he principle that a plaintiff who has participated in wrongdoing may not recover damages resulting from the wrongdoing." BLACK'S LAW DICTIONARY 806 (8th ed. 2004). While traditionally strictly limited to "situations where the plaintiff truly bore at least substantially equal responsibility for his injury,

12

. . . . many courts have given the *in pari delicto* defense a broad application to bar actions where plaintiffs simply have been involved generally in the same sort of wrongdoing as defendants. *Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 307, 105 S. Ct. 2622, 86 L. Ed. 2d 215 (1985) (internal quotation marks and citations omitted). However, the various maritime laws at issue indicate, by their terms or by clear implication, a relatively greater duty for compliance on the part of the master, owner, or employer. *See* 46 U.S.C. § 10302 ("The owner, charterer, managing operator, master, or individual in charge shall make a shipping agreement . . . ."); 46 U.S.C. § 10313(f)–(g) ("the master shall pay each seaman the balance of wages due the seaman"; "When payment is not made as provided . . . the master or owner shall pay to the seaman 2 days' wages for each day payment is delayed."); 46 U.S.C. § 11107 ("An engagement of a seaman contrary to a law of the United States is void."). Therefore, the defense of *in pari delicto* does not apply to plaintiffs' claims.

## VIII. Conclusion

Defendants' motion to dismiss is granted as to the breach of the CBA claim but denied as to the claims of breach of employment contract and violation of 46 U.S.C. §§ 10313 and 11107. Plaintiffs' claim under the FLSA has been voluntarily withdrawn. Defendants Sealift Chemicals, Inc., Sealift Tankships, Inc., Remington Shipping, Inc., and Wilson Shipping, Inc. are dismissed from this case.

SO ORDERED.

DATED:     Brooklyn, New York
              August 30, 2006

_____/s/_____
DORA L. IRIZARRY
United States District Judge