UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
SYLVESTER DZIENNIK, MIECZYSLAW : 
KIERSZTYN, FERDYNAND KOBIEROWSKI, : 
*individually and on behalf of all persons* : 
*similarly situated*, : 
                                    : **MEMORANDUM AND ORDER**
                    Plaintiffs, : **GRANTING PLAINTIFFS' MOTION**
                                      : **FOR CLASS CERTIFICATION**
               -against- : 05-CV-4659 (DLI)(MDG)
                                      : ⎯
SEALIFT, INC., FORTUNE MARITIME, INC., : 
SAGAMORE SHIPPING, INC., VICTORY : 
MARITIME, INC., : 
                                      : 
                   Defendants. : 
----------------------------------------------------------------x

**DORA L. IRIZARRY, U.S. District Judge:**

       The named plaintiffs, each a citizen of Poland, worked as seafarers aboard U.S. flag vessels

under the control of one or more of the defendants. On October 3, 2005, plaintiffs filed the instant

class action, seeking recovery of unpaid wages, overtime wages, and statutory penalties under

employment contracts and federal maritime law, specifically 46 U.S.C. §§ 10313 and 11107.

Presently before the court is plaintiffs' motion for class certification pursuant to Rule 23 of the

Federal Rules of Civil Procedure. Plaintiffs seek to certify a class of 209 seafaring employees, 113

of whom are Polish citizens and 96 of whom are Filipino citizens, who work (or previously worked)

on vessels owned by defendants at any time since January 1, 1999. Defendants oppose class

certification on the grounds that plaintiff cannot fulfill the "typicality" requirement under Rule

23(a)(3), the "adequacy" requirement under Rule 23(a)(4), or the "predominance" and "superiority"

requirements under Rule 23(b)(3). For the reasons set forth below, plaintiffs' motion is granted and

the proposed class is certified pursuant to Rule 23(b)(3).

## Background

The named plaintiffs assert three causes of action: (1) breach of "contracts of employment, including but not limited to Collective Bargaining Agreements between Defendants and/or its [sic] agents and the Seafarers International Union and the American Maritime Officers Union" for failure to pay "full wages due or otherwise owed"; (2) violation of 46 U.S.C. § 11107, through the engagement of seamen "contrary to a law of the United States"; and (3) violation of 46 U.S.C. § 10313(f) and (g) for "refusal and neglect to pay the seafarers their full balance of wages due [including overtime wages] without sufficient cause."[1] (Compl. ¶¶ 19–22.) On or about December 8, 2005, defendants moved to dismiss plaintiffs' complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). After a conference with the court on December 22, 2005, defendants voluntarily withdrew their motion to dismiss without prejudice to file a new motion following the completion of limited expedited discovery concerning the legal bases for plaintiffs' class claims. On January 20, 2006, defendants filed a second motion to dismiss the class action complaint pursuant to Rule 12(b)(6). On July 10, 2006, before the court had reached a decision on defendants' motion to dismiss, plaintiffs moved for class certification pursuant to Rule 23.

On August 30, 2006, the court granted defendants' motion to dismiss with respect to the breach of the collective bargaining agreement claim but denied the motion with respect to plaintiffs'

---

[1] As described in the court's order dated August 30, 2006, plaintiffs also alleged a violation of 46 U.S.C. § 10101 *et seq.* for failure "to pay full overtime wages pursuant to contracts and the [collective bargaining agreement], and the common law, United States statutory law, and the General Maritime Law." (Compl. ¶ 20.) To the extent that "United States statutory law" referred to a claim for overtime wages under the Fair Labor Standards Act, plaintiffs have voluntarily withdrawn such a claim.

claims for breach of employment contract and violations of 46 U.S.C. §§ 10313 and 11107. The court also dismissed the action as to defendants Sealift Chemicals, Inc., Sealift Tankships, Inc., Remington Shipping, Inc., and Wilson Shipping, Inc. because plaintiffs lacked standing as to them.

Although the facts underlying this dispute were detailed in the court's August 30, 2006 decision, the relevant and undisputed facts are worth repeating here because the court must engage in a fact-intensive inquiry in order to determine the instant motion.

Plaintiffs, Sylvester Dziennik, Mieczyslaw Kiersztyn, and Ferdynand Kobierowski (collectively, "plaintiffs" or "named plaintiffs"), are Polish citizens who worked at various times aboard one or more seagoing vessels owned by one or more of the defendants. Plaintiff Dziennik worked aboard the M/V ASCENSION (owned by Sagamore Shipping, Inc.) during 2000 and 2001, and aboard the S/S CLEVELAND (owned by Victory Maritime, Inc.) during 2000. Plaintiff Kiersztyn worked aboard the M/V ADVANTAGE (owned by Fortune Maritime, Inc.) during 2003. Plaintiff Kobierowski worked aboard the M/V ADVANTAGE during 2001 to 2004. Plaintiffs allege that defendant Sealift, Inc. is also the owner, manager and operator of the M/V ASCENSION, S/S CLEVELAND, and M/V ADVANTAGE, as well as of other vessels named in the complaint.[2]

Through discovery, the parties have provided (1) a list of Polish seafarers employed aboard Sealift, Inc. vessels, along with standard employment contracts for the Polish seamen, (2) a list of Filipino seafarers employed aboard Sealift, Inc. vessels, along with standard employment contracts

---

[2]According to the complaint, Sealift, Inc. also owns the TSGT John A. Champan (formerly the M/V MERLIN), the Captain Steven L. Bennett (formerly the M/V MONTAUK; also allegedly owned by Sealift Chemicals, Inc.), and the M/V VIRGINIAN (formerly the M/V SAGAMORE; also allegedly owned by Sagamore Shipping, Inc.). The rest of the fleet includes the M/V NOBLE STAR (owned by Sealift Tankships, Inc.), the M/V MAJOR BERNARD FISHER (owned by Remington Shipping Inc.), and the S/S WILSON (owned by Wilson Shipping, Inc.).

for the Filipino seamen, and the Philippines Overseas Employment Administration Contract of Employment, (3) numerous passenger crew lists, along with a summary providing the name of the vessel, the nationalities of the crew members on board, and the date and the port name, (4) plaintiffs' responses to defendants' contention interrogatories, and (5) the deposition transcripts of plaintiff Dziennik, plaintiff Kiersztyn, and plaintiff Kobierowski. (Mellusi Decl. Exs. 1-4; O'Neill Decl. Exs. A-D.)

## Discussion

### I.     Standards for Class Certification

Plaintiffs bear the burden of proof with respect to a motion for class certification. The first step requires plaintiffs to show that the four criteria of Federal Rule of Civil Procedure 23(a) are satisfied: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a); *In re Visa Check/MasterMoney Antitrust Litig.,* 280 F.3d 124, 132-33 (2d Cir. 2001), *cert. denied,* 536 U.S. 917, 122 S. Ct. 2382, 153 L. Ed. 2d 201 (2002). Once the Rule 23(a) criteria are established, plaintiffs must then demonstrate that they are entitled to certification in at least one of the Rule 23(b) categories. In the present case, plaintiffs seek certification under Rule 23(b)(3), which permits class certification "if the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3).

When considering a motion for class certification, the court must accept the allegations in the complaint as true. *Hirschfeld v. Stone,* 193 F.R.D. 175, 182 (S.D.N.Y. 2000). The court may also consider materials beyond the pleadings. *Daniels v. City of New York,* 198 F.R.D. 409, 413 n. 5 (S.D.N.Y. 2001). However, a court may not examine the merits of the case in a motion for class certification; Rule 23 should be given "broad, rather than restrictive interpretation." *Adames v. Mitsubishi Bank, Ltd.,* 133 F.R.D. 82, 88 (E.D.N.Y. 1989); *see also Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 178, 94 S. Ct. 2140, 40 L. Ed. 2d 732 (1974) ("We find nothing in either the language or history of Rule 23 that gives a court any authority to conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action."). "It is often proper to view the class action liberally at the early stages of the litigation since the class can always be modified or divided as issues are later refined for trials." *Adames,* 133 F.R.D. at 88 (citing *Woe by Woe v. Cuomo,* 729 F.2d 96, 107 (2d Cir. 1984)).

## II.     Rule 23(a) Requirements

### A.     Numerosity

Here, defendants do not dispute that the proposed class of 209 seafaring employees, 113 of whom are Polish citizens and 96 of whom are Filipino citizens, who work (or previously worked) on vessels owned by defendants at any time since January 1, 1999 is sufficiently numerous or that joinder would be impractical. Indeed, the Second Circuit has recognized that "numerosity is presumed at a level of 40 members." *Consolidated Rail Corp. v. Town of Hyde Park,* 47 F.3d 473, 483 (2d Cir. 1995). As such, plaintiffs satisfy the numerosity requirement.

### B.     Commonality

"The commonality and typicality requirements tend to merge into one another, so that similar

considerations animate analysis of Rules 23(a)(2) and (3)." *Marisol A. v. Giuliani,* 126 F.3d 372, 376 (2d Cir. 1997). "The crux of both requirements is to ensure that 'maintenance of a class action is economical and [that] the named plaintiff[s'] claim[s] and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Id.* (*quoting General Telephone Co. of Southwest v. Falcon,* 457 U.S. 147, 157 n. 13, 120 S. Ct. 2364, 72 L. Ed. 2d 740 (1982)). The commonality requirement will be met if the named plaintiffs share a common question of law or fact with the grievances of the prospective class. *See In re Agent Orange Prod. Liab. Litig.,* 818 F.2d 145, 166-67 (2d Cir. 1987). "This does not mean that all issues must be identical as to each member, but it does require that plaintiffs identify some unifying thread among the members' claims that warrant class treatment." *Kamean v. Local 363, Int'l Bhd. of Teamsters,* 109 F.R.D. 391, 394 (S.D.N.Y. 1986), *appeal dismissed,* 833 F.2d 1002 (2d Cir. 1986), *cert. denied,* 481 U.S. 1024, 107 S. Ct. 1911, 95 L. Ed 2d 517 (1987). "[T]he commonality requirement is satisfied if the class shares even one common question of law or fact," and "factual differences in the claims of the class do not preclude a finding of commonality." 5 *Moore's Federal Practice* § 23.23[2].

Here, plaintiffs share common factual and legal questions, such as whether defendants: (1) breached their contracts of employment for failure to pay "full wages due or otherwise owed"; (2) violated 46 U.S.C. § 11107, through the engagement of seamen "contrary to a law of the United States"; and (3) violated 46 U.S.C. § 10313(f) and (g) for "refusal and neglect to pay the seafarers their full balance of wages due [including overtime wages] without sufficient cause." (Compl. ¶¶ 19–22.) Moreover, defendants do not contest that these questions satisfy the commonality requirement. The court agrees.

## C.      Typicality

Rule 23(a) requires that the claims or defenses of the class representatives be typical of those of the class, and "is satisfied when each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove . . . defendant[s'] liability." *Robidoux v. Celani,* 987 F.2d 931, 936 (2d Cir. 1993).  "When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff[s] and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims." *Id*. at 936-37.  "Since the claims only need to share the same essential characteristics, and need not be identical, the typicality requirement is not highly demanding."  5 *Moore's Federal Practice* § 23.24[4].

Plaintiffs here are present or former seafaring employees aboard U.S. flag vessels under the control of one or more of defendants who are allegedly entitled to unpaid wages, overtime wages and statutory penalties due to defendants' breach of plaintiffs' employment contracts and violation of federal maritime law.

Defendants put forth a variety of arguments to demonstrate that plaintiffs have failed to satisfy the typicality requirement.  Defendants first argue that the named plaintiffs' claims are atypical because they will not work on defendants' vessels in the future, while the proposed class members "presumably still seek work aboard Sealift vessels."  (Defs.'Opp. Br. at 16.)  It is undisputed that plaintiff Dziennik is on permanent disability, plaintiff Kiersztyn is retired, after becoming disabled, and plaintiff Kobierowski refuses to work on Sealift vessels. (O'Neill Decl. Exs. B at 13, C at 11, D at 52-53.)  However, contrary to defendants' assertions, the record is devoid of evidence indicating that any of the putative class members are interested in working aboard Sealift

vessels in the future. Moreover, given that this Circuit has "directed district courts to apply Rule 23 according to a liberal rather than a restrictive interpretation," defendants' argument fails. *In re NASDAQ Market-Makers Antitrust Litig.,* 169 F.R.D. 493, 504 (S.D.N.Y. 1996) (citing *Korn v. Franchard Corp.,* 456 F.2d 1206, 1208-09 (2d Cir. 1972)).

Defendants next argue that the named plaintiffs are atypical because they only worked on three Sealift vessels, while the proposed class members worked on other vessels. However, it is well-settled that the mere existence of individualized fact questions with respect to the named plaintiffs' claims will not bar class certification. *See Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.,* 222 F.3d 52, 59 (2d Cir. 2000). Similarly, defendants' argument that plaintiffs have not established typicality because "[n]amed [p]laintiff Kiersztyn has a security interest, shared by none of the other class representatives or proposed members, obtained by filing an *in rem* action against the M/V ADVANTAGE" fails because a "difference in damages arising from a disparity in injuries among the plaintiff class does not preclude typicality." *Duprey v. Connecticut Dep't of Motor Vehicles,* 191 F.R.D. 329, 337 (D. Conn. 2000) (citing *Trautz v. Weisman,* 846 F. Supp. 1160, 1167 (S.D.N.Y. 1994).

Defendants further argue that, by virtue of a clause in the Philippines Overseas Employment Administration ("POEA"), the ninety-six Philippine nationals' claims are subject to a defense not applicable to the named plaintiffs' claims, namely that their claims should be arbitrated in the Philippines.[3] If the class representatives' claims are subject to one or more unique defenses that will

---

[3]The clause at issue here states:
**Section 29.     Dispute Settlement Procedures**
In cases of claims and disputes arising from this employment, the parties covered by a collective bargaining agreement shall submit the claim or dispute to the original and exclusive jurisdiction of the voluntary arbitrators or panel of arbitrators. If the parties are not covered by a

likely be central to the litigation, typicality will not be present.  *See Gary Plastic Packaging Corp.*

*v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 903 F.2d 176, 180 (2d Cir. 1990) ("class certification

is inappropriate when a putative class representative is subject to unique defenses which threaten to

become the focus of the litigation.").  The court first questions the relevance of the POEA because

it is not clear whether any of the seaman involved here signed the agreement, and it pertains to a

vessel named the "Strong Virginian" which, to the best of the court's knowledge, is not a vessel

involved in the instant action.  However, even assuming that the POEA is relevant, "seaman may sue

for wages . . . [under 46 U.S.C. § 10313] . . . without first exhausting any contractual dispute

resolution procedures."  *Korinis v. Sealand Servs., Inc.,* 490 F. Supp. 418, 420 (S.D.N.Y. 1980)

(citing *U.S. Bulk Carriers, Inc. v. Arguelles,* 400 U.S. 351, 91 S. Ct. 409, 27 L. Ed 2d 456 (1971)).

Specifically, Section 10313 provides, "[t]his section applies to a seaman on a foreign vessel when

in a harbor of the United States.  The courts are available to the seaman for the enforcement of this

section."  46 U.S.C. § 10313(I).  Moreover, defendants' reliance on *Acosta v. Norwegian Cruise*

*Line, Ltd.* in arguing that the Filipino seamens' claims are subject to the defense that their claims

should be arbitrated in the Philippines is misplaced because the plaintiff in *Costa* sued for damages

for injuries sustained while employed on defendant's cruise ship pursuant to the Jones Act, 46 U.S.C.

§ 688, whereas the named plaintiffs here are suing for wages pursuant to the Seaman's Wage Act,

---

collective bargaining agreement, the parties may at their option submit the claim or dispute to
either the original and exclusive jurisdiction of the National Labor Relations Commission
(HLRC), pursuant to Republic Act (RA) 8042 otherwise known as the Migrant Workers and
Overseas Filipinos Act of 1995 or to the original and exclusive jurisdiction of the voluntary
arbitrator or panel of arbitrators.  If there is no provision as to the voluntary arbitrators to be
appointed by the parties, the same shall be appointed from the accredited voluntary arbitrators of
the National Conciliation and Mediation Board of the Department of Labor and Employment.
(Mellusi Decl. Ex. 1 at 76.)

46 U.S.C. § 10313.  303 F. Supp. 2d 1327, 1330-32 (S.D.Fla. 2003).

Finally, defendants argue that plaintiff Dziennik is subject to the unique defense that "he was not a 'seaman' to whom the provisions of the Merchant Seaman Protection and Relief Act apply" because a significant portion of his employment took place while the vessel on which he worked was moored and the crew discharged.  (Defs.' Opp. Br. at 16-17.)  The Merchant Seaman Protection and Relief Act ("MSPRA") broadly defines "seaman" as "an individual (except scientific personnel, a sailing school instructor, or a sailing school student) engaged or employed in any capacity on board a vessel." 46 U.S.C. § 10101.  The instant motion is not the appropriate forum to determine whether plaintiff Dziennik lost his seaman status while working aboard the M/V ASCENSION given that a court may not examine the merits of the case in a motion for class certification.   "As long as plaintiffs assert, as they do here, that defendants committed the same wrongful acts in the same manner against all members of the class, they establish necessary typicality."  *In re Prudential Sec. Inc. Ltd. P'ship Litig.,* 163 F.R.D. 200, 208 (S.D.N.Y. 1995) (*quoting In re Amerifirst Sec. Litig.,* 139 F.R.D. 423, 429 (S.D.Fla. 1991).[4]

For all these reasons, plaintiffs have established typicality.

### D.     Adequacy of Representation

Rule 23(b)(4) requires that the representative parties "fairly and adequately protect the

---

[4]Defendants raised the additional argument that named plaintiffs' claims under the collective bargaining agreement and 46 U.S.C. § 10101 *et seq.* are barred by the statute of limitations.  However, as discussed *supra*, the court dismissed these claims on August 30, 2006.  Thus, the court need not address defendants' argument.  Moreover, defendants' contention that named plaintiffs' claims are subject to a specific defense, the doctrine of laches, to which other members of the class "may not be subject," indicates that defendants intend to assert this defense against all putative class members, not just the named plaintiffs.  (Defs.' Opp. Br. at 15-16); *see also Gary Plastic Packaging Corp.,* 903 F.2d at 180 (holding that the typicality requirement will not be satisfied if the class representatives' claims are subject to a unique defense).

interests of the class." The adequacy of representation requirement entails two factors: (1) class counsel must be qualified, experienced and generally able to conduct the litigation; and (2) the interests of the named plaintiffs cannot be antagonistic to those of the remainder of the class. *Marisol,* 126 F.3d at 378. "[O]nly a conflict that goes to the very subject matter of the litigation will defeat a party's claim of representative status." *Martens v. Smith Barney Inc.,* 181 F.R.D. 243, 259 (S.D.N.Y. 1998) (*quoting* 7 Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1768, at 639 (1972)). In this regard, the court notes that the speculative suggestion of potential conflicts is insufficient to defeat class certification. S*ee Savino v. Computer Credit, Inc.,* 173 F.R.D. 346, 353 (E.D.N.Y. 1997) (citing *Gruby v. Brady,* 838 F. Supp. 820, 827 (S.D.N.Y. 1993)).

Defendants devote a majority of their brief to attacking both the adequacy of class counsel and the class representatives. As to the former, defendants argue that proposed class counsel are inadequate because (1) Mellusi has a history of fighting against the rights of foreign seafarers to work on U.S. flag vessels, (2) Mellusi and Dodson represent putative class member Felskowski in a separate action, (3) Dodson represents named plaintiff Kiersztyn in a separate action, and (4) plaintiffs' moving papers demonstrate that Mellusi and Dodson cannot adequately represent the class.

The court finds no merit in defendants' first argument, that "an insurmountable ideological conflict exists between Mr. Mellusi's work against the interests of foreign seafarers (and in favor of U.S. labor unions) and his responsibility herein." (Defs.' Opp. Br. at 11-12.) Moreover, the idea that putative class counsel are in some way incompetent because they "repeated word-for-word the entire legal argument" from a memorandum of law submitted in another case is entirely irrelevant. (Defs.' Opp. Br. at 14-15.) Since being admitted in 1975, Ralph J. Mellusi, of Tabak, Mellusi & Shisha, has

devoted his career to maritime litigation. His practice is focused in the area of seaman's rights, including bodily injury, wage and contract issues, administrative claims and hearings before the United States Coast Guard, and Maritime Administration, and in the representation of seamen and various maritime labor activities. In 1981 he returned to his *alma mater*, SUNY Maritime College at Fort Schuyler, to serve as an Adjunct Professor of admiralty and maritime law, a position he held until 1989, and he has sailed in the industry as a ship's engineering officer. (O'Neill Decl. Ex. A at 18.) Indeed, as stated by defendants, putative class counsel Mellusi is a "seasoned maritime attorney." (Defs.' Opp. Br. at 11.) Similarly, Richard J. Dodson, of Dodson & Hooks APLC, has represented foreign seafarers in the area of seaman's rights, including wage litigation, for many years. He serves on an adjunct faculty in the field of admiralty for two law schools and has published papers for legal seminars dealing with the rights of foreign seafarers in wage litigation. (O'Neill Decl. Ex. A at 17-18.) Clearly, based on their experience in the field of admiralty and maritime law, and in particular wage litigation, as well as their handling of the instant litigation thus far, putative class counsel Mellusi and Dodson have the qualifications, experience and competence to represent the class members.

Furthermore, class counsels' representation of putative class member Felskowski and named plaintiff Kiersztyn in separate actions do not create a conflict of interest. The causes of action raised in Mr. Felskowski's and Mr. Kiersztyn's separate suits are nearly identical to those raised by the named plaintiffs in the instant action, and class counsel have represented to the court that Mr. Felskowski and Mr. Kiersztyn intend to move to consolidate all three actions following class certification. Moreover, every member of the putative class, as a matter of law, has a preferred maritime lien against the vessel upon which he served to the extent of his unpaid wages and penalty

wages. *See* 46 U.S.C. § 31301(5)(D); *The Englewood,* 57 F.2d 319, 320 (D.C.N.Y. 1932) ("The crew had a maritime lien for their wages.").

As to the adequacy of the class representatives, defendants put forth many of the same points used to argue that plaintiffs had not satisfied the typicality requirement. For instance, defendants first claim that an "insurmountable conflict between the proposed representative Plaintiffs (who have no ability or desire to work again on a Sealift vessel) and the putative class members (many of whom presumably have both the ability and desire to do so)" exists. As stated above, the record is devoid of evidence indicating that any members of the proposed class have an interest in continuing to work on defendants' vessels. Moreover, given the passage of Public Law 109-241 on July 11, 2006, which imposes stringent limitations on the use of foreign seamen on U.S. flag vessels, defendants potential conflict is insufficient to defeat class certification.[5]

Second, defendants argue that the named plaintiffs lack the knowledge necessary to represent the proposed class members because the named plaintiffs only worked on three Sealift vessels, whereas the proposed class members worked on Sealift's six other vessels. Without knowledge of the actions of the captains in charge of the six other vessels, defendants argue that the named plaintiffs cannot adequately represent the proposed class members due to the requirements of the "penalty wage" statute, 46 U.S.C. § 10313(g). Section 10313(g) provides that "when payment [of a seaman's wages] is not made [ ] *without sufficient cause,* the master or owner shall pay to the seaman 2 days' wages for each day payment is delayed." (Emphasis added). However, it is a "well-established rule that wrongful withholding alone does not establish the absence of sufficient cause

---

[5]*See* Coast Guard and Maritime Transportation Act of 2006, Pub. L. No. 109-241, 120 Stat. 516.

. . . . The punitive penalty should not be imposed where payment is withheld in good faith under the reasonable belief that it is not due." *Vinieris v. Byzantine Maritime Corp.,* 731 F.2d 1061, 1063 (2d Cir. 1984). "In establishing the 'absence of sufficient cause,' seamen first bear the burden of demonstrating the payment of wages has been delayed." *Brown v. Royal Caribbean Cruises, Ltd.,* No. 99 Civ. 2435, 2000 WL 34449703, *4 (S.D.N.Y. Aug. 24, 2000). Once the seamen have demonstrated delay in the payment of wages, "the burden of proof [then] falls upon the master to show that the delay was justified." *Id.* (citing *Smith v. Western Offshore, Inc.,* 590 F.Supp. 670, 675 (E.D.La.1984)); *see also Jose v. M/V Fir Grove,* 801 F.Supp. 358, 376 (D.Or.1992) ("[o]nce a seaman establishes a delay in the payment of wages, the burden of proof shifts to the master to show that the delay was justified."). Given that the burden lies on the masters, rather than on plaintiffs, to prove that the delay is justified, the fact that named plaintiffs did not work on the six other vessels does not render them inadequate to serve as class representatives.

Third, defendants contend that named plaintiffs "have insufficient knowledge of the allegations in the complaint" because plaintiff Kiersztyn incorrectly testified that a claim personal to him was included in the class action, and plaintiff Kobierowski testified that he is entitled to an additional "bonus." (O'Neill Decl. Ex. C at 151, 175, 195-96; Ex. D at 60-63, 92-95, 110-13, 130.) Where a plaintiff seeks to represent a class, an integral component of a class representative's "adequacy" must be a minimum threshold of knowledge about the case which, considering the nature of the claim, is sufficient to make reasonable decisions at critical stages of the litigation. However, in the instant matter, the court does not share defendants' interpretation of the named plaintiffs' deposition testimonies. Although plaintiffs Kiersztyn and Kobierowski demonstrated some confusion during their depositions with respect to whether plaintiff Kiersztyn is seeking additional

14

sick leave wages stemming from his prior personal injury lawsuit, and the amount of damages being sought, named plaintiffs are adequate class representatives. A plain reading of the deposition testimonies make clear that plaintiffs Kiersztyn and Kobierowski understand the duties and responsibilities of being class representatives. (O'Neill Decl. Ex. C at 196-99; Ex. D at 188-22.) They have met with their attorneys several times before the lawsuit was brought, and have read the complaint to the extent they are able to do so given that English is not their first language. (O'Neill Decl. Ex. C at 192; Ex. D at 115-17.) They understand that the complaint seeks a recovery of unpaid wages, overtime wages, and statutory penalties. (*Id*.) They are also aware of the number of potential class members, as well as their nationalities. (O'Neill Decl. Ex. C at 197-99; Ex. D at 116.) In fact, plaintiff Kiersztyn testified that he has spoken directly with at least thirty of the potential class members. (O'Neill Decl. Ex. C at 197.) Therefore, the fact that plaintiff Kiersztyn was temporarily confused about whether a claim personal to him was included in the class action does not render him an inadequate representative, given the complexity of this case and the number of claims involved.

Fourth, defendants argue that plaintiff Kiersztyn has a secured claim which conflicts with the unsecured claims of the putative class because in December 2005, plaintiff Kiersztyn obtained a $15,000.00 bond by the arrest of the M/V ADVANTAGE in the United States District Court for the Southern District of Texas, which has now been transferred to this court. As discussed above, a determination of this issue, which essentially involves the allocation of damages, is unnecessary at this stage of the litigation. The fact that the interests of the class members may ultimately diverge from plaintiff Kiersztyn's interests when it comes time to allocate damages does not warrant the denial of class certification where, as here, there is no current conflict that "goes to the heart of the lawsuit." *In re College Bound,* No. 93 Civ. 2348, 1994 WL 236163, at *3 (S.D.N.Y. May 31, 1994)

(*quoting In re AM Int'l. Inc. Sec. Litig.,* 108 F.R.D. 190, 196 (S.D.N.Y. 1985) ("It is well established that individual questions with respect to damages will not defeat class certification or render a proposed representative inadequate unless that issue creates a conflict which goes to the heart of the lawsuit.") (internal quotations omitted). Any conflicts that may arise as to the allocation of such damages can be resolved at that juncture by the creation of subclasses. *See In re Drexel Burnham,* 960 F.2d 285, 290 (2d Cir. 1992) (class certification proper where members of subclasses shared interest in establishing defendant's liability and achieving maximum possible recovery for their subclass; arguments about differences among members' rights to recovery were premature); *Maywalt v. Parker & Parsley Petroleum Co.,* 147 F.R.D. 51, 56 (S.D.N.Y. 1993) ("differences regarding damages among class members is not sufficient to defeat class certification"); *AM Int'l,* 108 F.R.D. at 196 & n. 8 (noting that the court may later decide to create subclasses if some conflict of interest appears between those who sold stock during class period and those who did not).

Finally, with respect to defendants' argument that "plaintiffs cannot represent the Filipino riding crew members as their claims are governed by a valid and binding arbitration clause," the court finds that the interests of the named plaintiffs are not antagonistic to those of the remainder of the class members because, as discussed above, any potential conflict is speculative given that the relevance of the POEA is questionable and that seamen may sue for wages under Section 10313 without first exhausting any contractual dispute resolution procedures. *See* 46 U.S.C. § 10313(j); *Korinis,* 490 F. Supp. at 420.

In assessing these factors, the court is satisfied that the named plaintiffs are adequate representatives for the proposed class in this matter. Accordingly, plaintiffs have sufficiently proven Rule 23(a)'s adequacy requirement.

## III.  Rule 23(b)(3) Requirements

### A.  Predominance

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 623, 117 S. Ct. 2231, 138 L. Ed 2d 689 (1997).  In order to meet the predominance requirement, a plaintiff must establish that "the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, . . . predominate over those issues that are subject only to individualized proof." *In re Visa,* 280 F.3d at 136 (citing *Rutstein v. Avis Rent-a-Car Sys., Inc.,* 211 F.3d 1228, 1233 (11th Cir. 2000)).  Courts should particularly "focus on the liability issue . . . and if the liability issue is common to the class, common questions are held to predominate over individual questions." *Dura-Bilt Corp. v. Chase Manhattan Corp.,* 89 F.R.D. 87, 93 (S.D.N.Y. 1981).  "Common issues may predominate when liability can be determined on a class-wide basis, even when there are some individualized damage issues." *In re Visa,* 280 F.3d at 139.

In the instant action, defendants argue that plaintiffs have not satisfied the predominance requirement because "the factual and legal issues requiring individualized proof by (and individualized discovery from) each class member would be at least as significant as those issues subject to generalized proof." (Defs.' Opp. Br. at 19.)  As examples of factual and legal issues requiring individualized proof, defendants include: (1) whether each class member's duties and job description qualify him as a "seaman" for purposes of the MSPRA; (2) whether each class member was paid the full amount owed to him pursuant to the employment contracts he signed with defendants; (3) whether, for each class member's claims pursuant to the MSPRA, he can prove facts necessary to overcome a laches defense; (4) whether each class member was paid the "highest rate

of wages at the port from which the seaman was engaged," pursuant to 46 U.S.C. § 11107, and if not, what is the "highest rate of wages at the port from which the seaman was engaged" for each individual class member; and (5) whether the amounts owed to each class member were not paid "without sufficient cause," pursuant to 46 U.S.C. § 10313(g).[6]

With respect to the third and fifth issues, "the fact that a defense 'may arise and may affect different class members differently does not compel a finding that individual issues predominate over common ones.'" *In re Visa,* 280 F.3d at 138 (*quoting Waste Mgmt. Holdings, Inc. v. Mowbray,* 208 F.3d 288, 296 (1st Cir. 2000)). "As long as a sufficient constellation of common issues binds class members together, variations in the sources and application of [a defense] will not automatically foreclose class certification under Rule 23(b)(3)." *Waste Mgmt. Holdings, Inc.,* 208 F.3d at 296; *accord Williams v. Sinclair,* 529 F.2d 1383, 1388 (9th Cir. 1975) (stating that the existence of a defense " does not compel a finding that individual issues predominate over common ones" when there is a "sufficient nucleus of common questions.").

Moreover, as discussed above, the burden of proving whether the amounts owed to each class

_____

[6] Defendants raised the additional issue of "whether each class member signed a release, the terms of which may preclude the filing of this action" as an example of a factual issue requiring individualized proof. (Defs.' Opp. Br. at 20 n. 19.) In support of their argument, defendants represented that plaintiffs Kiersztyn and Kobierski had already signed releases. However, an examination of plaintiff Kiersztyn's deposition testimony reveals that the release he signed only related to his personal injury claim against defendant Sealift, while plaintiff Kobierski's deposition testimony merely states that he "signed some kind of a receipt, I mean a letter, saying what I really received" in terms of sick wages as a result of an injury on board the M/V ADVANTAGE. (O'Neill Decl. Ex. C at 229; Ex. D at 102-03.) As such, the record is devoid of evidence indicating that any class member signed a release, precluding them from filing the instant suit. Furthermore, two additional issues raised by defendants involved the Collective Bargaining Agreement with the Seafarers International Union of North America. However, the court granted defendants' motion to dismiss with respect to the breach of the collective bargaining agreement claim on August 30, 2006.

member were not paid "without sufficient cause" falls upon the master. *See Brown,* 2000 WL 34449703, at *4; *see also Vinieris,* 731 F.2d at 1063-64 (holding that the punitive penalty of 46 U.S.C. §10313(f) may not be imposed where payment was withheld in good faith under a reasonable belief that it was not due). Therefore, defendants may raise a defense that the wages were not withheld "without sufficient cause" by introducing testimony of the captains as to their beliefs, motives, and intent in withholding wages. *See Vinieris,* 731 F.2d at 1064. However, for purposes of determining predominance, the fact that a defense may arise and may affect different class members differently, depending on which vessel a particular class member worked on and whether the captain of that vessel can prove that the wages were not withheld "without sufficient cause," does not preclude a finding of predominance. The putative class members rely on common legal theories, namely whether plaintiffs have been paid full wages and overtime wages, and if not, whether failure to do so entitled them to federal statutory penalties. (Compl. ¶¶ 19-22.) Moreover, their claims arise from a common nucleus of facts given that all 209 seafaring employees work (or previously worked) on defendants' vessels at any time since January 1, 1999, and that defendants allegedly engaged in a uniform practice or scheme to deprive their employees of wages and overtime wages.

Likewise, with respect to the second and fourth issues raised by defendants, "[c]ommon issues may predominate when liability can be determined on a class-wide basis even when there are some individualized damage issues." *In re Visa*, 280 F.3d at 139; *see also* 5 *Moore's Federal Practice* § 23.46[2][a] ("In actions for money damages under Rule 23(b)(3), courts usually require individual proof of the amount of damages each member incurred. Nevertheless, if common questions predominate over individual questions as to liability, courts generally find the predominance standard of Rule 23(b)(3) to be satisfied even if individual damages issues remain.").

It is undisputed that plaintiffs damages here may differ; however, such differences are generally

manageable. *In re Visa,* 280 F.3d at 141 ("There are a number of management tools available to a

district court to address any individualized damages issues that might arise in a class action,

including: (1) bifurcating liability and damage trials with the same or different juries; (2) appointing

a magistrate judge or special master to preside over individual damages proceedings; (3) decertifying

the class after the liability trial and providing notice to class members concerning how they may

proceed to prove damages; (4) creating subclasses; or (5) altering or amending the class.").

Finally, defendants argue that a determination of whether each class members' duties and job

description qualify him as a "seaman" for purposes of the MSPRA would require the "[c]ourt to hold

many mini-trials . . ., which would be wholly inefficient." *Dunnigan v. Metropolitan Life Ins. Co.,*

214 F.R.D. 125, 140 (S.D.N.Y. 2003). The class action complaint states that the putative class

members were employed as seamen aboard U.S. flag vessels under the control of one or more of the

defendants. (*See* Compl. ¶¶ 9-12.) Given that the court must accept the allegations in the complaint

as true when considering a motion for class certification, *see Hirschfeld,* 193 F.R.D. at 182, plaintiffs

have established, at this stage, that common questions predominate over all other factual and legal

issues presented. Plaintiffs each raise the same underlying, contested issues: that defendants

deprived plaintiffs of wages and overtime wages duly earned in violation of their employment

contracts and federal maritime law, specifically 46 U.S.C. §§ 10313 and 11107. Moreover, "the

court remains free to modify the class should future factual circumstances warrant." *Bolanos v.*

*Norwegian Cruise Lines Ltd.,* 212 F.R.D. 144, 148 (S.D.N.Y. 2002); *see also Richardson v. Byrd,*

709 F.2d 1016, 1019 (5th Cir. 1983) ("Under Rule 23 the district court is charged with the duty of

monitoring its class decisions in light of the evidentiary development of the case. The district judge

must define, redefine, subclass, and decertify as appropriate in response to the progression of the case from assertion to facts"); *Woe by Woe,* 729 F.2d at 107 ("It is often proper . . . for a district court to view a class action liberally in the early stages of litigation, since the class can always be modified or subdivided as issues are refined for trial.").

### B.    Superiority of Class Action over Alternatives

Factors relevant to the superiority of a class action under Rule 23(b)(3) include: (1) the interest of the members of the class in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (4) the difficulties likely to be encountered in the management of a class action.  Fed. R. Civ. P. 23(b)(3).

The question of whether a class action is the superior method for adjudication of the instant controversy is a close one.  The likelihood of individual plaintiffs shouldering the burden and cost of bringing individual suits against defendants in federal court is low, given that all 209 members of the putative class are foreign nationals and reside in either Poland or the Philippines.  However, the court is aware of two pending suits that concern the instant litigation – one brought by putative class member Felskowski (04-CV-1244) and the other brought by named plaintiff Kiersztyn (06-CV-5305).  As indicated above, named plaintiff Kiersztyn obtained a $15,000 bond by the arrest of the M/V ADVANTAGE in the United States District Court for the Southern District of Texas in December 2005, and the case has since been transferred to this court.  Putative class member Felskowski brought suit against defendants Sealift and Sagamore on March 25, 2004.  Although the court entered an order dismissing his personal injury claim on February 24, 2006 due to a settlement

agreement, Mr. Felskowski reserves all rights to proceed against defendants on his claim for unpaid wages, overtime wages and statutory penalties under the stipulation for partial dismissal.  Mr. Felskowski has a motion for partial summary judgment on that claim currently pending before the court; however, it is the court's understanding that none of the putative class members intend to individually control the prosecution of a separate action if the motion for class certification is granted.  Therefore, the interest of the putative class as a whole to litigate the predominant common questions is substantially outweighed by individual members' interest in bringing and prosecuting a separate action.

Furthermore, these common questions are best litigated in a single forum, given the number of seafarers affected and their geographic dispersion.  *See Bolanos,* 212 F.R.D. at 158 (certifying a class of approximately 5,000 seafarer-employees of over fifty different nationalities from around the world who work, or previously worked, on defendant's vessels in a variety of departments including Hotel/Housekeeping, Gallery/Provision, Dining Room, and Bar Departments).  The court in *Bolanos* found that "[t]he interests of justice will be well served by resolving the common disputes of potential class members in one forum.  Individual suits would not be cost effective, especially in light of the fact that many of the plaintiffs are foreign nationals." *Id*.  Similarly, the court here finds that concentrating the instant litigation within the Eastern District of New York, a single forum in which defendants actively engage in business, promotes efficiency and judicial economy.

With respect to the last factor, manageability of a class action, defendants argue that a class action is not a superior method of adjudication because it "will be difficult to provide class members with appropriate notices or otherwise communicate with the class," given that the putative class is comprised of 209 seafarers who are presumably traveling throughout the world, and that each class

member will have a unique claim for damages. *Mateo v. M/S Kiso, et al.,* 805 F. Supp. 761, 774 (N.D.Cal. 1991). Although the court in *Mateo* found the "communication difficulty [to be] fatal where . . . each plaintiff has a unique claim for damages," the Second Circuit has stated that "failure to certify an action under Rule 23(b)(3) on the sole ground that it would be unmanageable is disfavored and should be the exception rather than the rule." *In re Visa,* 280 F.3d at 140 (internal quotations marks omitted); *see also In re Bristol Bay, Alaska, Salmon Fishery Antitrust Litig.,* 78 F.R.D. 622, 628 (W.D.Wa. 1978) ("dismissal for management reasons, in view of the public interest involved in class actions, should be the exception rather than the rule."). This is particularly the case given the variety of management tools available to a district court to address any individualized damages issues that might arise in a class action. *See id.* at 141.

Defendants further argue that a class action is not superior because the potential amount recoverable by each plaintiff is not *de minimus*. *See Benner v. Becton Dickinson & Co.,* 214 F.R.D. 157, 173 (S.D.N.Y. 2003) (denying class certification in part because each class member's alleged damages were in excess of $75,000; "[t]hus, this is not a case where the potential recovery for each plaintiff is *de minimus* and a class action is necessary for any class members to recover"); *Caceres v. International Air Transport Ass'n, et al.,* 46 F.R.D. 89, 95-96 (S.D.N.Y. 1969) ("it must be observed that treble damages in the amount of $120,000,000 are demanded in the complaint; this would amount to an average of $150,000 per member of the class . . . such a sum would be sufficiently substantial to induce any member of the class who believes that he had been damaged to seek a day in court."). Plaintiffs allege that "the amount in controversy, for each member of the class, exclusive of interest and costs, is in excess of $75,000 . . . ." (Compl. ¶ 5.) However, similar to the plaintiffs in *Bolanos*, which consisted of approximately 5,000 seafarers of over fifty different

nationalities, all 209 putative class members here are foreign nationals and reside in either Poland or the Philippines. Therefore, it would not be economically feasible or practical for the putative class members to maintain the instant suit as individual actions.

The court finds that a class action is superior to other available methods for the fair and efficient adjudication of the controversy at issue herein. *See* Fed. R. Civ. P. 23(b)(3). Accordingly, the specific considerations set forth in Rule 23(b)(3) are satisfied.

## Conclusion

For the reasons set forth above, the court certifies the proposed class pursuant to Rule 23(b)(3).

SO ORDERED.

DATED:       Brooklyn, New York
                      May 29, 2007


_____/s/_____
DORA L. IRIZARRY
United States District Judge